BD. OF COMMRS. SANDUSKY CO. PARK DIST., APPELLANT, *v.*
ANNADALE SCRAP CO., INC., APPELLEE.

[Cite as Bd. of Commrs. v. Scrap Co. (1978),
60 Ohio App. 2d 415.]

(No. S-77-36—Decided December 1, 1978.)

*Mr. Alex Hyzer, IV,* for appellant.
*Mr. Marvin G. Manes,* for appellee.

BROWN, J.  This is an appeal by plaintiff, the Board of Commissioners of Sandusky County Park District, for a final judgment in favor of defendant, the Annadale Scrap Company, Inc. Plaintiff sought to recover a judgment in the sum of $7,673.77 for a claim arising out of a scrap removal contract and its performance, as hereinafter described.

The facts of this case are not disputed. On December 5, 1975,* the Board of Commissioners of Sandusky County Park District and Annadale Scrap Co., Inc., executed a written contract whereby the parties agreed that Annadale would remove all scrap metal from the White Star recreation area at Gibsonburg, Ohio, on or before August 1, 1976, and pay the Commissioners, for the scrap removed each week, a price calculated by the market formula of fifty seven percent of the highest price per ton paid for No. 1 heavy melting steel on the Cleveland market, as quoted in Iron Age magazine for that week.

---

* Counsel, on appeal, agree that the contract in question was executed on December 5, 1975, although a document titled "Contract [No. 1677]," containing the same terms and dated 10/20/75. was admitted in evidence at trial.

Annadale removed an unspecified amount of metal before August 1, 1976, under the terms of the contract. As all of the scrap had not been removed by August 1, Annadale continued to remove metal thereafter. On August 20, the Commissioners notified Annadale by mail that Annadale would be charged for any scrap removed after July 31, 1976, at the price per ton that was in effect on July 31, (*i.e.,* fifty seven percent of $85 per ton). Annadale responded in a letter of August 23 that, "The Iron Age will govern." Annadale continued removing scrap metal until November 1976, when all the metal contracted for had been removed. In total, Annadale removed 480 tons of steel after August 1, 1976, during which period the market price of steel dropped from $85 per ton to less than $60 per ton.

Annadale tendered to the Commissioners the amount of $15,580.97, which it calculated it owed for the 480 tons of scrap, based on the original contract formula. The Commissioners refused the tender and sued to collect $23,254.74, which they claimed was due, based on the July 31-August 1 market price of fifty seven percent of $85 per ton.

During pre-trial proceedings, the $15,580.97 which Annadale admitted owing was paid, and the case was tried to the court for the amount in dispute, $7,673.77.

The trial court found that time was not of the essence in the contract, that the Commissioners' setting of the price for scrap removed after August 1 was arbitrary, that the contract price formula was a reasonable means of determining the price for scrap removed after August 1, and that the delay in removing the scrap was not unreasonable.

The Commissioners appeal, assigning four errors:

"I. The trial court erred in finding that time was not of the essence in the written agreement entered into by and between the parties introduced into evidence as defendant's exhibit C [*sic*].

"II. The trial court erred in finding that the setting of the price of steel by plaintiff as of August 1, 1976, was arbitrary.

"III. The trial court erred in finding that the price fixing mechanism in the written agreement was controlling subsequent to August 1, 1976, and that defendant's failure to time-

ly perform its obligations under the written agreement was not unreasonable.

"IV. The judgment is contrary to law, specifically, Section 1302.18 (C) of the Ohio Revised Code."

The first assignment of error is well taken, but not dispositive; none of the other assignments of error are well taken.

The written contract specified August 1, 1976, as the time within which performance was to be completed. The setting of a specific time was an indication that time was of the essence to the parties when the contract was executed; nonetheless, we find that the Commissioners, through the words and actions of their agent, Dana Reed, Director of the Sandusky County Park District, modified the written contract prior to August 1, 1976, so as to grant Annadale an extension of time beyond August 1, in which to complete performance. The new time for performance was "as soon as possible." The Commissioners' consideration for this extension was Annadale's promise that the scrap would be completely removed before the winter of 1976; that is, the White Star area would be cleared without the Commissioners having to incur further expense and delay by readvertising the work remaining to be done.

Annadale acted in reliance upon the modification and completed performance as soon as possible after August 1, having had to contend with equipment failures by its subcontractor. Although the price of scrap decreased after August 1, the record does not indicate that Annadale's failure to complete performance by that date was a result of its bad faith dealing, or that Annadale necessarily profited by the delay due to the price decrease. On November 23, 1976, Reed wrote to Annadale: "I have made the final site inspection of your job site at White Star Recreation Area, and have found that the scrap metal has been satisfactorily removed."

The modification of the written contract went only to the time for performance, which the parties agreed to extend prior to the expiration date of the original contract, not to a new price, which the Commissioners unilaterally sought to impose after the original contract had expired. The change in price was not consideration for the extension of time.

418

As no new price was agreed upon, the original price formula is not only reasonable, but binding on the parties.

We do not decide whether R. C. Chapter 1302 applies to the mixed goods and services contract herein. *Cf. Allied Industrial Service Corp.* v. *Kasle Iron & Metal, Inc.,* unreported, Sixth Appellate District, No. L-77-071, decided December 30, 1977. Assuming, arguendo, that this contract is governed by R. C. Chapter 1302, R. C. 1302.18 (C) is not applicable since that section applies only when the price term is left open on the making of the agreement, which was not the situation here. Moreover, if R. C. 1302.18 (C) were applicable, it would authorize Annadale to set a reasonable price, since it was the Commissioners who interferred with the price fixed by the contract.

*Judgment affirmed.*

POTTER, P. J. and WILEY, J., concur.

WILEY, J., retired, was assigned to active duty under Authority of Section 6 (C), Article IV., Constitution.