HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.

**NAGLE HEATING & AIR CONDITIONING COMPANY, Appellee,**

v.

**HESKETT, d.b.a. Heskett Construction, Appellant.**

[Cite as *Nagle Heating & Air Conditioning Co.
v. Heskett* (1990), 66 Ohio App.3d 547.]

Court of Appeals of Ohio,
Scioto County.

No. 1787.

Decided June 1, 1990.

*Daniel P. Ruggiero,* for appellee.

*Willis Walker,* for appellant.

GREY, Judge.

This is an appeal from a judgment of the Portsmouth Municipal Court granting Nagle Heating & Air Conditioning Company ("Nagle") damages in the amount of $4,500 for breach of contract against Daniel Heskett, d.b.a. Heskett Construction ("Heskett"). We reverse.

The record reveals the following facts. In early 1987, the Portsmouth Metropolitan Housing Authority ("PMHA") awarded Heskett the contract to construct a twenty-three-unit residential turnkey project in Portsmouth, Ohio. Heskett then solicited bids for the completion of certain portions of the contract by subcontractors.

Nagle, a heating, ventilation and air conditioning ("HVAC") contractor, submitted a proposal for the construction of the HVAC system for the twenty-three units. Heskett awarded the $42,046 HVAC contract to Nagle.

On May 28, 1987, Heskett hand-delivered a written contract to Jack Patterson, an employee of Nagle. The contract contained a clause which provided for liquidated damages in the amount of $100 per day if Nagle failed to complete the HVAC work by September 25, 1987.

Without signing or returning the contract to Heskett, Nagle commenced work on the project and, pursuant to the contract terms, he received progress payments for the work he completed.

On September 29, 1987, four days after the project was scheduled to be completed, Nagle signed and returned the contract to Heskett. On that contract Nagle typed a clause requiring that the subcontractor be given a three-day warning before additional penalties were assessed. Heskett indicated that the requirement was unacceptable. Nagle continued to work on the project and, on October 14, 1987, Heskett gave Nagle a "punch list" of deficiencies which needed to be corrected. At the bottom of that list Heskett advised Nagle that if the deficiencies were not corrected by October 17, 1987, liquidated damages would be assessed. The work was not completed as specified until February 12, 1988.

On March 15, 1988, Heskett mailed the final payment to Nagle, having deducted $4,500 as liquidated damages pursuant to the performance agreement in the contract.

On April 13, 1988, Nagle brought a breach of contract action against Heskett for nonpayment of the $4,500.

The matter came on for trial with both parties presenting testimony. At the close of all the testimony, Heskett moved for a directed verdict. The trial court overruled Heskett's motion and granted judgment to Nagle in the amount of $4,500.

Heskett appeals and assigns two errors which we shall treat jointly:

## ASSIGNMENT OF ERROR NO. 1

"The Court erred, to the prejudice of the Defendant, in finding that the Plaintiff's acceptance of the contract imposed a three (3) day notice requirement which was consented to by the Defendant."

## ASSIGNMENT OF ERROR NO. 2

"The judgment is not sustained by the evidence and is against the manifest weight of the evidence."

In both of Heskett's assignments of error, he basically asserts that the trial court's findings and judgment were not supported by the evidence presented. We agree.

The ultimate issue in this case revolves around when a contract existed between the parties. Heskett asserts that a contract existed when he signed the contract, gave it to an employee of Nagle, and Nagle began performance on or about June 5, 1987. Nagle, on the other hand, argues that the contract between the parties was not executed until Nagle added the three-day warning clause and signed the contract on September 29, 1987.

A contract is a meeting of the minds of the parties seeking to formulate an agreement. A written contract is evidence of what was in the minds of the parties at the time they entered into the contract. A clause added as an afterthought by one party despite the other party's opposition does not rise to a "meeting of the minds" requisite to form a contract.

Here, it is evident from the testimony of both Heskett and Nagle that Nagle began performance of and accepted periodic payments for his work pursuant to the contract executed by Heskett on May 28, 1987. At no time prior to September 29, 1987 did Nagle give any indication that he disagreed with the contract terms.

In support of his argument that the contract between the parties did not exist until he added the three-day warning clause and signed it, Nagle cites the case of *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.* (1978), 54 Ohio St.2d 147, 8 O.O.3d 149, 375 N.E.2d 410, in which the Ohio Supreme Court quoted from Corbin on Contracts, stating:

" 'Frequently, services are rendered under circumstances such that the party benefited thereby knows the terms on which they are being offered. *If he receives the benefit of the services in silence,* when he had a reasonable *opportunity to express his rejection of the offer, he is assenting to the terms proposed and thus accepts the offer.'* " (Emphasis added.) *Berjian, supra,* at 153, 8 O.O.3d at 152, 375 N.E.2d at 414.

Here, Nagle undertook performance of the HVAC contract and received and accepted the benefits of that performance in the form of payments. Nagle never communicated any rejection of the contract until September 29, 1987, four days after the terms of the contract called for the completion of Nagle's work. Thus, the contract came into existence at the time of Nagle's acceptance of the contract, when Nagle undertook performance and accepted payment for that performance, well before that additional term, *i.e.,* the three-day warning, had been added to the contract.

We now turn to the question of whether Heskett had breached that contract. We find that Heskett did not.

Below, Nagle asserted that the addition of the three-day warning constituted a modification of the contract requiring Heskett to give Nagle a three-day warning prior to assessing liquidated damages. The trial court found that there was such a modification, that Heskett was bound by it and that by failing to give the requisite three-day warning, Heskett breached that modified contract.

A contract cannot be unilaterally modified. In order to modify a contract, the parties to that contract must mutually consent to the modification. See, generally, *Sandusky Cty. Park Dist. Bd. of Commrs. v. Annadale Scrap Co.* (1978), 60 Ohio App.2d 415, 14 O.O.3d 430, 398 N.E.2d 810. Here, there is nothing in the record to support the court's finding that Heskett consented to that additional term. Rather, the record shows that Heskett specifically rejected that additional term. There was no modification of the contract because there was no agreement of the parties.

It logically follows that since there was no modification of the contract, Heskett was not required to give Nagle a three-day warning before assessing liquidated damages and, thus, did not breach the contract between the parties when he assessed those damages.

We note, in the alternative, that although Heskett was not required to give Nagle the three-day warning, he did indeed give Nagle that warning of impending liquidated damages on October 14, 1987. At that time Heskett gave Nagle three days to get the work performed up to specifications. Nagle's work on the ventilation ducts was not done to specifications until February 12, 1988, almost five months after the original contract completion date. The bottom line is that Nagle failed to perform the contract within the time specified in the contract and that pursuant to the original contract Heskett had a right to access those liquidated damages and validly did so.

The trial court erred in finding otherwise. Heskett's assignments of error are well taken and are sustained. The judgment of the trial court is reversed.

*Judgment reversed.*

HOMER E. ABELE, P.J., concurs.

STEPHENSON, J., concurs in judgment only.