[Cite as *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

FIRST NATIONAL BANK OF
PENNSYLVANIA

      Appellee

      v.

RUTH S. NADER, et al.

      Appellants

C.A. No.     16CA0004-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    11CIV0833

DECISION AND JOURNAL ENTRY

Dated: April 24, 2017

CALLAHAN, Judge.

{¶1}    Appellants, Ruth Nader, individually ("Ms. Nader") and in her capacity as trustee of the Almost Heaven Revocable Trust ("the Trust"), and Malek Abboud ("Malek Abboud"), appeal the judgment of the Medina County Court of Common Pleas in favor of Appellee, First National Bank of Pennsylvania, successor by merger to Park View Federal Savings Bank ("the Bank"). For the reasons set forth below, this Court affirms.

I.

{¶2}    In 1998, Ms. Nader and Elie Abboud were married and the owners of real property located at 470 Boston Road, in Hinckley, Ohio. They executed a promissory note and home equity line of credit, which were secured by mortgages on the real property. In 1999, they transferred title of the real property to the Trust.

{¶3}    In 2006, Malek Abboud, brother to Elie Abboud and brother-in-law to Ms. Nader, executed an Unconditional and Continuing Guaranty as to the credit line. Ms. Nader and Elie

Abboud divorced in 2007. In 2008, Ms. Nader and the Trust executed two Assumption and Modification Agreements, one for the promissory note and one for the credit line. Elie Abboud did not sign either of the Assumption and Modification Agreements. As a guarantor, Malek Abboud consented to the Assumption and Modification Agreement of the credit line by Ms. Nader and the Trust.

{¶4} In October 2010, Ms. Nader and the Trust defaulted on the promissory note, the credit line, and the Assumption and Modification Agreements for both. The Bank filed a complaint for breach of contract, breach of guaranty, and foreclosure against Ms. Nader, the Trust, and Malek Abboud. They responded with a counterclaim and third-party complaint asserting claims for breach of contract and fraud. Three months later, the Bank filed an amended complaint, adding Elie Abboud as a defendant. Ms. Nader, the Trust, and Malek Abboud answered the amended complaint and reasserted their counterclaim and third-party complaint. In response to the Bank's summary judgment motions on their claims, Ms. Nader, the Trust, and Malek Abboud dismissed their counterclaim and third-party complaint. The Bank then dismissed Elie Abboud. Only the Bank's amended complaint against Ms. Nader, the Trust, and Malek Abboud remained pending.

{¶5} The trial court granted the Bank's motion in limine to preclude evidence of the amount due arising prior to and contemporaneous with the signing of the modification agreements. Additionally, the trial court sua sponte struck the jury demands of Ms. Nader, the Trust, and Malek Abboud and denied their motions for leave to refile the counterclaim and motion to join indispensable party. The trial court proceeded to grant summary judgment and enter a decree of foreclosure in favor of the Bank.

**{¶6}** Ms. Nader, the Trust, and Malek Abboud have timely appealed, raising six assignments of error for this Court's review. To facilitate the analysis, this Court will address the assignments of error out of order.

II.

**ASSIGNMENT OF ERROR NO. 5**

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

**{¶7}** Appellate courts consider an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *See Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record.

**{¶8}** Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶9}** Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this

burden, the non-moving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in his pleadings, but instead must submit evidence as outlined in Civ.R. 56(C). *Id.* at 293; Civ.R. 56(E).

{¶10} To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present "evidentiary-quality materials" establishing: (1) that the plaintiff is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) that the mortgagor is in default; (4) that all conditions precedent have been satisfied; and (5) the amount of principal and interest due. *Wachovia Bank of Delaware, N.A. v. Jackson,* 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3203, ¶ 40-45. Ms. Nader, the Trust, and Malek Abboud assert three main arguments as to how the trial court erred in granting the Bank summary judgment on its amended complaint.

## A. Condition Precedent

{¶11} "'[T]he plaintiff in a foreclosure action must prove that all conditions precedent have been met in order to meet its burden of proof for summary judgment.'" *Wells Fargo Bank, N.A. v. Awadallah*, 9th Dist. Summit No. 27413, 2015-Ohio-3753, ¶ 26, quoting *Huntington Natl. Bank v. Payson*, 2d Dist. Montgomery No. 26396, 2015-Ohio-1976, ¶ 18. A condition precedent is "the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 11 (1917).

{¶12} Ms. Nader, the Trust, and Malek Abboud assert the Bank did not give Elie Abboud notice of default prior to acceleration of the notes. Thus, they argue this omission

constitutes a failure of a condition precedent and renders the amended complaint fatally defective. The Bank did not respond to this specific assertion.

{¶13} Paragraph 21 of the open-ended mortgage securing the promissory note states, in pertinent part "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument[.]" Paragraph 13 of the open-ended mortgage securing the credit line similarly states

> [u]pon Borrower's breach of any provision of this Mortgage or if a default shall occur under the Agreement, Lender, upon notice to Borrower, may * * *, declare all the sums secured by this Mortgage to be immediately due and payable, [and] foreclose this Mortgage by judicial proceeding * * *.

Accordingly, prior to accelerating the balance due on the promissory note and the credit line and filing an action to foreclose the mortgages, the Bank was required to give the borrowers, Ms. Nader, the Trust, and Elie Abboud, notice of their default and opportunity to cure the default.

{¶14} The record reflects, and Ms. Nader and the Trust do not dispute, that she and the Trust were served with notice of default. However, the record is void of any notice issued to Elie Abboud. This, however, does not render the amended complaint fatally defective.

{¶15} The promissory note specifically permits the Bank to "enforce its rights under this Note against each person individually or against all of us together." Similarly, the credit line states "you and the joint Account holder each promise to pay and are jointly and individually responsible for all amounts due on the joint Account." Additionally, the Assumption and Modification Agreements for both the promissory note and the credit line indicate "[i]n all other respects, all terms and conditions of the Loan Documents shall remain in full force and effect[.]" Accordingly, the Bank is permitted to sue either one or both of the borrowers under the promissory note, the credit line, and the Assumption and Modification Agreements.

{¶16} At the time of the summary judgment motion, Elie Abboud was not a named party. The Bank voluntarily dismissed him five months earlier, thereby electing not to enforce its rights against Elie Abboud. Because the Bank was not pursuing an action for default on the promissory note or the credit line against Elie Abboud, there was no requirement to give him written notice of default. The Bank was only pursuing an action against Ms. Nader and the Trust and did provide written notice of default to them.

{¶17} Based upon the review of the record, Ms. Nader, the Trust, and Malek Abboud failed to meet their *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the condition precedent.

**B.** **Enforceability of Assumption and Modification Agreements**

{¶18} Ms. Nader, the Trust, and Malek Abboud assert three separate arguments as to why the Assumption and Modification Agreements are unenforceable:

1) the Assumption and Modification Agreements were unilaterally modified;

2) the Assumption and Modification Agreements are unenforceable pursuant to R.C. 1303.15; and

3) the Assumption and Modification Agreements are unconscionable.

As discussed below, Ms. Nader, the Trust, and Malek Abboud failed to meet their *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the enforceability of the Assumption and Modification Agreements.

*1.* *Unilateral Modification*

{¶19} "'A contract cannot be unilaterally modified. In order to modify a contract, the parties to that contract must mutually consent to the modification.'" *Fraher Transit, Inc. v. Aldi,*

*Inc*., 9th Dist. Summit No. 24133, 2009-Ohio-336, ¶ 12, quoting *Nagle Heating & Air Conditioning Co. v. Heskett*, 66 Ohio App.3d 547, 550 (4th Dist.1990).

{¶20} It is undisputed that Elie Abboud executed the promissory note and the credit line, but did not execute the Assumption and Modification Agreements for both of those notes. This fact alone does not render the Assumption and Modification Agreements unenforceable. It is necessary to review the loan documents to determine if Elie Abboud was also required to execute the Assumption and Modification Agreements.

{¶21} The promissory note contains language that the Bank "may enforce its rights under this Note against each person individually or against all of us together." The credit line also specifies that joint account holders are "jointly and individually responsible for all amounts due." Because the Bank had the option to pursue claims jointly or individually against Ms. Nader and Elie Abboud, the Bank also had the option to enter a modification agreement jointly or individually with Ms. Nader and Elie Abboud. In this case, the Bank chose to enter into Assumption and Modification Agreements with Ms. Nader and the Trust, and not Elie Abboud. Ms. Nader and the Trust agreed to enter into the Assumption and Modification Agreements. Because the terms of the promissory note and the credit line allowed the Bank to work either jointly or individually with the borrowers, the Bank did not need to include Elie Abboud in order to have mutual consent for a modification.

## 2. *R.C. 1303.15*

{¶22} Ms. Nader, the Trust, and Malek Abboud argue that R.C. 1303.15 provides them with a defense to their financial obligations under the Assumption and Modification Agreements. R.C. 1303.15 states:

> Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the

instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.

They claim to have executed the Assumption and Modification Agreements only because of the explicit assurances of Mr. Male, a representative of the Bank, that Elie Abboud would have to approve the Assumption and Modification Agreements and he would still be liable for the debt. Under their theory, Mr. Male's assurances modified the terms of the Assumption and Modification Agreements. And because Mr. Male's assurances were not satisfied, the Assumption and Modification Agreements are unenforceable against them.

{¶23} Ms. Nader, the Trust, and Malek Abboud's reliance on R.C. 1303.15 in this instance is misplaced. The statute precludes the use of parol evidence to establish the facts in such a situation.

{¶24} The Ohio Supreme Court explains the parol evidence rule as

a principle of common law providing that a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing. The rule operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form, and it assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document * * * were not intended by the parties to survive.

(Internal citations and quotations omitted.) *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, ¶ 7.

{¶25} When construing a contract, it is imperative to ascertain the parties' intent. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). Generally, courts presume that the parties' intent can be found in the written terms of their contract. *Shifrin v.*

*Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). If a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." *Aultman* at 53. If, however, "a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties." *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521 (1994). Therefore, "[p]arol evidence directed to the nature of a contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement[.]" *Id.* at paragraph two of the syllabus. Parol evidence is used only to interpret the terms, and not to contradict the terms. *See Blosser v. Enderlin*, 113 Ohio St. 121, 134 (1925). Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *Butler v. Joshi,* 9th Dist. Wayne No. 00CA0058, 2001 WL 489962, *2 (May 9, 2001). "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." *Ohio Historical Soc. v. Gen. Maintenance and Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist.1989).

{¶26} The Assumption and Modification Agreements to the promissory note and the credit line both state "the Original Borrower is not to be released from the obligations imposed under the Loan Documents, and [the Bank] is agreeing not to release the Original Borrower therefrom[.]" Additionally, they state "[i]n all other respects, all terms and conditions of the Loan Documents shall remain in full force and effect, without intending, however, to cancel or extinguish said indebtedness or otherwise affect the validity, priority and enforceability of the Loan Documents, as modified hereby."

{¶27} The Assumption and Modification Agreements define Elie Abboud as one of the "Original Borrower[s]." As an "Original Borrower," Elie Abboud, is still responsible for the

debts owed under the promissory note and the credit line. The Assumption and Modification Agreements did not extinguish Elie Abboud's obligations under the loan documents.

{¶28} Further, the Assumption and Modification Agreements name the parties to the agreement as being the Bank and "Ruth S. Abboud, Trustee of the Almost Heaven Revocable Trust, dated 1/29/99" who is defined as the "'Borrower.'" The Trust and Ms. Nader "assum[ed] and agree[d] to pay said indebtedness" listed therein. As to Malek Abboud, the guarantor, the Assumption and Modification Agreements stated "[t]he undersigned * * *, hereby consent[s] to the foregoing loan modification." There are only signature lines for the borrowers (Ms. Nader, personally and as trustee for the Trust) and the guarantor (Malek Abboud). There is no signature line for Elie Abboud. Moreover, other than being defined as an "Original Borrower," Elie Abboud's name is not listed anywhere on the Assumption and Modification Agreements. Nothing in the Assumption and Modification Agreements required Elie Abboud's approval because there was no change in the terms as to him. Further, as discussed above, his approval was unnecessary because the loan documents permitted the Bank to pursue the debt individually or jointly.

{¶29} The above language is unambiguous and contains the signators' intentions: Elie Abboud is still responsible for the debts under the promissory note and the credit line, the Trust assumed the debts under the promissory note and the credit line, and Ms. Nader, the Trust, and Malek Abboud agreed to pay the debts per the modified terms. Accordingly, Ms. Nader, the Trust, and Malek Abboud's intentions are contained in the written terms of the Assumption and Modification Agreements and no parol evidence is permitted. Without parol evidence, Ms. Nader, the Trust, and Malek Abboud are unable to assert a defense under R.C. 1303.15.

### 3. *Unconscionable*

**{¶30}** Lastly, Ms. Nader, the Trust, and Malek Abboud assert the Assumption and Modification Agreements are unconscionable. An agreement is unconscionable when there is "both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (Internal citations and quotations omitted.) *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 34. Ms. Nader, the Trust, and Malek Abboud have the burden of establishing that the Assumption and Modification Agreements are both procedurally and substantively unconscionable. *See Benfield* at ¶ 34. A determination regarding the unconscionability of a contract and its provisions is purely a question of law and involves a de novo review. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 159 Ohio App.3d 27, 2004-Ohio-5953, ¶ 12 (9th Dist.).

**{¶31}** "'Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible.'" *Brunke v. Ohio State Home Servs., Inc.*, 9th Dist. Lorain No. 08CA009320, 2008-Ohio-5394, ¶ 10, quoting *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, ¶ 7 (9th Dist.). To evaluate procedural unconscionability, this Court considers factors bearing directly on the relative bargaining position of the parties such as "age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶ 31 (9th Dist.). Generally, no one factor alone determines whether a contract is procedurally unconscionable. *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 29. Instead, a court must consider the totality of the circumstances. *Id.* at ¶ 30.

**{¶32}** "Substantive unconscionability encompasses those factors that concern the contract terms themselves[.]" *Eagle* at ¶ 31. "Contract terms are [substantively] unconscionable if they are unfair and commercially unreasonable." *Porpora* at ¶ 8, citing *Bank One, NA v. Borovitz,* 9th Dist. Summit No. 21042, 2002-Ohio-5544, ¶ 16.

**{¶33}** At the time she executed the Assumption and Modification Agreements, Ms. Nader was approximately 50 years old. She graduated from high school in 1975. She obtained her teaching degree from The College of Wooster in 1979 and her law degree from Cleveland Marshall Law School in 1982. She continued to take courses in education to renew her teaching license.

**{¶34}** While Ms. Nader never held herself out to the public as an attorney, she performed divorces, prepared wills for people, incorporated a business, and did immigration and workers' compensation work. Since 2008, she has worked for the family business in the human resources department handling health insurance and workers' compensation matters and attending hearings.

**{¶35}** While she is an attorney, she did not setup the Trust. However, she testified that the Trust existed for Elie Abboud "to group all the properties together" and that her children are the successors to the Trust.

**{¶36}** Ms. Nader argues she had no involvement with any of the business transactions or family expenses. She explained that Elie Abboud handled all of the financial matters and she did not ask any questions. Then in 2006 her brother-in-law, Malek Abboud, took over the financial matters and her sons became involved in 2010. She and Elie Abboud divorced in 2007.

**{¶37}** Despite these claims, Ms. Nader acknowledges that she signed the promissory note and the credit line in 1998 with Elie Abboud. She understood the promissory note was "to finish the house" and the credit line was for the businesses.

**{¶38}** Ms. Nader also testified that she was aware that the home was heading toward foreclosure in late 2007. She began questioning Malek Abboud about the financial circumstances surrounding the promissory note in 2007. She also contacted the Bank in late 2007 and early 2008 for documents regarding the promissory note and the credit line and questioned the amounts due on the accounts. The Bank sent Ms. Nader a letter in January 2008 regarding her inquiry as to a loan modification for the promissory note and the credit line. Also, during this time she learned that there was a third lien on the home held by MEMO, a company with which Elie Abboud conducted business. She contacted MEMO to inquire about the lien.

**{¶39}** On June 2, 2008, Ms. Nader and Malek Abboud had a meeting with Mr. Male, a representative of the Bank, to discuss a modification of the promissory note and the credit line. This meeting was approximately five months after she received a letter regarding the Bank's proposed payment terms for a modification. Ms. Nader understood the purpose of the loan modification was to "allow [her] to get caught up on the mortgages, reduce the payments, and remain in [her] home."

**{¶40}** At the meeting, Ms. Nader read the Assumption and Modification Agreements prepared by the Bank. She claims the Bank had paperwork stating Elie Abboud was to be released from the promissory note and the credit line. She told Mr. Male "he couldn't do that." She described her discussion with Mr. Male on this topic as "a really big disagreement." Based on the terms of the divorce decree, she objected to Elie Abboud not being listed on the documents and to any release by the Bank of him from these debts. In fact, she had brought a

copy of the divorce decree to the meeting "to show [Mr. Male] that Elie was to stay on there. And [she] kept telling him no." She insisted that Elie Abboud sign the Assumption and Modification Agreements and not be released from the debts. Ms. Nader avers that she and Malek Abboud signed the Assumption and Modification Agreements only after Mr. Male agreed to her terms.

{¶41} Contrary to Ms. Nader, the Trust, and Malek Abboud's position, Ms. Nader's lack of knowledge and involvement in the financial transactions of the family and the businesses prior to 2007 does not create a great disparity in bargaining power. The record reflects Ms. Nader had knowledge of the promissory note and the credit line, took action to investigate and challenge the balances of these accounts and a newly discovered lien, took steps to obtain a modification of these notes, and challenged the language and terms of Assumption and Modification Agreements and got the Bank to agree to her demands prior to signing the documents. She came prepared to the meeting and actively engaged in the meeting via discussions, reading documents, and presenting documents. Additionally, five months lapsed from the time she received the letter offering a modification to the time that she signed the modification. Thus, she had time to explore other options to address the impending foreclosure.

{¶42} Further, Ms. Nader has been an attorney since 1982. While her legal experiences do not include financial or business transactions, she understood the importance of a foreclosure action and the ramifications of a divorce decree on financial obligations. While Ms. Nader and Malek Abboud were not represented by an attorney during this transaction, she nonetheless applied her legal and negotiating skills to effectuate the modification.

{¶43} Based on the totality of the circumstances, Ms. Nader, the Trust, and Malek Abboud failed to carry their burden to show procedural unconscionability. Accordingly, this

Court need not consider their arguments with respect to substantive unconscionability. *See Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, at ¶ 34.

### C. <u>Amounts due and owing on notes</u>

**{¶44}** Ms. Nader, the Trust, and Malek Abboud argue there is a genuine issue of material fact as to the amount due and owing under the promissory note and the credit line. They argue the Assumption and Modification Agreements are unenforceable and cannot be used to calculate the balance due because Ms. Nader was induced to enter these Agreements without knowledge of other transactions which reduced the balances below those stated in the Agreements. They also argue the Bank impermissibly accessed the credit line causing it to exceed the amount of credit available. Additionally, they assert there has not been a proper accounting of their proceeds from the absorption or sales of stock. All of these incidents occurred prior to the execution of the Assumption and Modification Agreements in 2008.

**{¶45}** To establish the amounts due on the accounts, the Bank relied on the balances stated in the Assumption and Modification Agreements and the affidavit and supporting bank accounting statements from the Bank's representative. The Bank limited its scope of evidence based on the trial court's motion in limine ruling which precluded evidence originating prior to the execution of the Assumption and Modification Agreements.

**{¶46}** Motions in limine are only preliminary rulings on trial evidence and thus are not procedurally applicable in a summary judgment context. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. Franklin No. 09AP-788, 2010-Ohio-1649, ¶ 37. "[D]efendants' motions in limine, and the trial court's rulings on them, play no role in determining defendants' summary judgment motions even though they may address admissibility issues the court also considers under Civ.R. 56." *Id.* Accordingly, this Court will conduct its de novo review

considering the Civ.R. 56(C) evidence in this case and not based on the trial court's motion in limine ruling.

{¶47} Relative to the issue of the amount due on the promissory note and the credit line, the Assumption and Modification Agreements each contain a sentence wherein they state the amount of the unpaid principal balance as of June 2, 2008. The paragraph goes on to state the modified interest rate, payments, and maturity date. Under the terms of the Assumption and Modification Agreements, the Trust and Ms. Nader "assum[ed] and agree[d] to pay said indebtedness" listed therein. As to Malek Abboud, the guarantor, the Assumption and Modification Agreements stated "[t]he undersigned * * *, hereby consent[s] to the foregoing loan modification." The language regarding the amount of the unpaid balances and the agreement to pay/guaranty the debts is unambiguous and contains the signators' intentions: Ms. Nader, the Trust, and Malek Abboud agreed to pay the unpaid balances stated in the Assumption and Modification Agreements. Accordingly, Ms. Nader, the Trust, and Malek Abboud's intentions are contained in the written terms of the Assumption and Modification Agreements and no parol evidence is permitted.

{¶48} Ms. Nader, the Trust, and Malek Abboud do not argue that the terms of the Assumption and Modification Agreements are ambiguous and parol evidence is necessary to interpret the terms. Instead, they attempt to improperly use parol evidence to contradict the amount of the unpaid balances stated in the Assumption and Modification Agreements. *See Blosser,* 113 Ohio St. at 134. Further, their argument that the Assumption and Modification Agreements are unenforceable is a reiteration of their earlier assignment of error which this Court overruled. Accordingly, the unpaid balance statements contained in the Assumption and

Modification Agreements govern as to the starting point for calculating the amounts due and owing on both accounts.

**{¶49}** The Bank submitted the affidavit of its Vice President of Special Lending, along with annual account loan statements and loan payoff statements for both the promissory note and the credit line. These documents calculated the current amount due and owing on the promissory note and the credit line based on the balances contained in the Assumption and Modification Agreements. Ms. Nader, the Trust, and Malek Abboud do not challenge these figures with non-parol evidence.

**{¶50}** In light of the foregoing, Ms. Nader, the Trust, and Malek Abboud failed to meet their *Dresher* burden of establishing the existence of a genuine issue of material fact regarding the amounts due and owing on the promissory note and the credit line.

**D. Conclusion**

**{¶51}** After considering the foregoing arguments, the trial court did not err by granting summary judgment in favor of the Bank as against Ms. Nader, the Trust, and Malek Abboud. Their fifth assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 4**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING THE MOTION OF DEFENDANT-APPELLANT MALEK ABBOUD TO JOIN ELIE ABBOUD AS AN INDISPENSABLE PARTY.

**{¶52}** In the fourth assignment of error, Malek Abboud argues the trial court erred in finding Elie Abboud was not a necessary and indispensable party. This Court disagrees.

**{¶53}** A trial court's decision regarding a question of joinder is reviewed for an abuse of discretion. *See Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 184 (1984). An abuse of discretion is "'more than an error of law or judgment; it implies that the trial court's attitude was

unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying the abuse of discretion standard, this Court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶54} Civ.R. 19(A) governs the joinder of persons if feasible and states:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7).

An indispensable party is defined as:

> "one whose absence seriously prejudices any party to the action or prevents the court from rendering any effective judgment between the parties, or is one whose interests would be adversely affected or jeopardized by the judgment rendered between the parties to the action. Mere avoidance of multiple litigation is not a sufficient basis to render one an indispensable party."

*Englehart v. C.T. Taylor Co., Inc.*, 9th Dist. Summit No. 19325, 1999 WL 1215110, *2, quoting *Layne v. Huffman*, 43 Ohio App.2d 53, 59 (10th Dist.1974).

{¶55} Malek Abboud contends Elie Abboud is a necessary party to the case because he is the maker of the promissory note and Malek Abboud's obligations under the Unconditional and Continuing Guaranty is expressly derivative of Elie Abboud's obligations under the promissory note. He argues a determination as to his obligations, independent of Elie Abboud's obligations, would create a risk of inconsistent obligations as to Malek Abboud pursuant to

Civ.R. 19(A)(2)(b). He also argues any liability found against him is subject to subrogation against Elie Abboud and requires joinder under Civ.R. 19(A)(3).

{¶56} The terms of the Unconditional and Continuing Guaranty executed by Malek Abboud in 2006 with respect to the credit line expressly contradict both of his arguments. The Guaranty contains a provision specifying that the Bank may elect to proceed against either Malek Abboud, Elie Abboud, or both of them:

> [The Bank] shall not be obligated to proceed against, or exhaust any other remedies it may have under the Note [credit line] or any of the Loan Documents, or resort to any other security held by [the Bank] prior to enforcing the obligations of [Malek Abboud] hereunder. The obligations of [Malek Abboud] hereunder are independent of the obligations of [Elie Abboud], and a separate action or actions may be brought against [Malek Abboud] whether or not action is brought against [Elie Abboud] and whether or not [Elie Abboud] is joined in any such action or actions.

This provision renders Malek Abboud's obligations under the credit line separate and distinct of Elie Abboud's obligations under the credit line. Thus, Elie Abboud's obligations under the credit line do not need to be determined independently before the Bank can obtain judgment against Malek Abboud under the Guaranty. Accordingly, Elie Abboud is not an indispensable party to this action pursuant to Civ.R. 19(A)(2)(b).

{¶57} As to his claim for subrogation, the Guaranty specifically indicates Malek Abboud has waived such rights against Elie Abboud:

> [Malek Abboud] hereby waives and relinquishes any right to subrogation or other right or claim to payment against [Elie Abboud] or [Elie Abboud's] estate arising out of or on account of any sum paid or agreed to be paid by [Malek Abboud] under this Guaranty, whether such right or claim is liquidated, unliquidated, fixed, contingent, matured or unmatured.

Based on this provision, Malek Abboud has no rights to subrogation against Elie Abboud. Accordingly, Elie Abboud is not an indispensable party to this action pursuant to Civ.R. 19(A)(3).

{¶58} Further, Malek Abboud's argument is misplaced because he relies upon the wrong financial documents in his request to join Elie Abboud. Malek Abboud states in his brief, "Elie is a maker of the original *promissory note*" and references the "note" in the remainder of the argument. (Emphasis added.) However, the Bank's amended complaint sought judgment against Malek Abboud as a guarantor of the credit line and not the promissory note. As the Bank was not seeking judgment against Malek Abboud as to the promissory note, Malek Abboud's request to join Elie Abboud based on that instrument is misplaced.

{¶59} Based on the express language of the Unconditional and Continuing Guaranty, the trial court did not abuse its discretion when it denied Malek Abboud's motion to join Elie Abboud as an indispensable party. Malek Abboud's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING THE MOTION OF [DEFENDANTS]-APPELLANT[S] RUTH S. NADER, INDIVIDUALLY AND AS TRUSTEE OF THE ALMOST HEAVEN REVOCABLE TRUST, FOR LEAVE TO REINSTATE HER COUNTERCLAIM.

{¶60} In the third assignment of error, Ms. Nader and the Trust argue that the trial court erred in denying her leave to refile her counterclaim. This Court disagrees.

{¶61} Whether to grant a party leave to file a counterclaim is solely within the discretion of the trial court and will not be disturbed on appeal unless the ruling was an abuse of discretion. *See Natl. City Bank, Akron v. Donaldson*, 95 Ohio App.3d 241, 248 (9th Dist.1994); *Natl. City Bank v. Fleming*, 2 Ohio App.3d 50, 54 (8th Dist.1981). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶62} Civ.R. 13(A) generally requires a compulsory counterclaim to be filed with the answer. *Mulhollen v. Angel*, 10th Dist. Franklin No. 03AP-1218, 2005-Ohio-578, ¶ 27. The

failure to do so constitutes res judicata once the original action reaches a final judgment. *Quintus v. McClure*, 41 Ohio App.3d 402, 403-404 (9th Dist.1987).

**{¶63}** Civ.R. 13(F), "Omitted counterclaim," sets forth a procedure for "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires[.] [H]e may by leave of court set up the counterclaim by amendment." An amendment under Civ.R. 13(F) is also governed by Civ.R. 15(A) which favors leave to amend unless there is "'a finding of bad faith, undue delay or undue prejudice to the opposing party.'" *Josselson v. Josselson*, 52 Ohio App.3d 60, 61 (8th Dist.1988), quoting *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6 (1984).

**{¶64}** "'The procedure for asserting an omitted counterclaim pursuant to Civil Rule 13(F) is for defendant to submit a motion requesting that the court permit him to amend his answer to assert the counterclaim.'" *Mulhollen* at ¶ 27, quoting McCormac, *Ohio Civil Rules Practice*, Section 8.08, at 203 (2d Ed.1992). The language of Civ.R. 13(F), places the burden on the movant to justify why he should be permitted to file an untimely counterclaim. *Rosenberg v. Gattarello*, 49 Ohio App.2d 87, 94-95 (8th Dist.1976). The movant should include a factual explanation to justify the untimely filing. *Id.* at 95. Failure to do so is grounds for denial of the motion. *Id.*

**{¶65}** This foreclosure action was filed on June 2, 2011. Ms. Nader and the Trust, timely filed an answer and counterclaim to the complaint. On September 16, 2011, the Bank sought and was granted leave to amend the complaint. Ms. Nader and the Trust timely filed an answer and counterclaim to the Bank's amended complaint.

**{¶66}** The case was pending for 27 months, during which time the parties engaged in extensive discovery disputes related to the counterclaims that escalated to the point of the trial

court appointing a special master to handle the disputes. On January 24, 2014, after the resolution of the discovery disputes, the Bank filed a motion for summary judgment against Ms. Nader and the Trust as to their counterclaims. In lieu of filing a response, Ms. Nader and the Trust filed a Civ.R. 56(F) motion seeking additional time to respond because the parties planned on taking depositions at the end of February. The trial court granted them an additional two months, until April 24, 2014, to respond to the Bank's summary judgment motion. On the date of the new response brief deadline, Ms. Nader and the Trust dismissed the counterclaims without prejudice in lieu of filing a response brief. This dismissal rendered the Bank's summary judgment motions moot. From June 2011 to August 2014, Ms. Nader and the Trust were represented by Attorney Gold.

{¶67} Three months after the dismissal of their counterclaims, Ms. Nader and the Trust, retained new counsel, Attorney Potash. During the next eight months, a number of legal issues were addressed. The trial court granted Plaintiff's motion in limine to exclude all "evidence at trial concerning information and negotiations originating prior to or contemporaneous with the execution of the Modification Agreement[s] regarding different amounts owed on the Promissory Note and the Home Equity Line of Credit than those amounts agreed to in the Modification Agreement[s]." Additionally, the trial court struck the jury demands of Ms. Nader, the Trust, and Malek Abboud. They moved the trial court to reconsider the decision to strike their jury demands and a hearing was held. That motion was held in abeyance pending the ruling on other motions. Also, the Bank dismissed Elie Abboud from the case.

{¶68} On April 8, 2015, Attorney Aten appeared in the case as the third attorney for Ms. Nader and the Trust. Attorney Potash was discharged as their counsel on April 14, 2015. Attorney Aten filed a motion for leave to reinstate their counterclaim. The motion, which has

been restated verbatim in the appellate brief, moves for leave to essentially refile the counterclaim in the original action because it is a compulsory counterclaim and res judicata would prevent them from asserting the claims in another proceeding. Ms. Nader and the Trust contend the previous counterclaim was dismissed by their first attorney without their knowledge or consent and without notice "of the effect of the dismissal upon the scope of the evidence she would be permitted to introduce in support of her defense."

{¶69} The trial court held a hearing on the motion on May 22, 2015. Attorney Aten readily admitted during at the hearing that they were seeking to refile the counterclaim in response to the trial court's adverse motion in limine ruling against Ms. Nader and the Trust:

> As to the fact that this is a *tactical reassertion* of the Counterclaim, *of course it is*.
> * * *
> If the claims before the Court don't put pre-2008 events at issue, then the motion in limine was properly granted. If the claims before the Court do put those facts at issue, then the motion in limine would have been properly denied. *I don't dispute that that's certainly our goal here*.

(Emphasis added.) He also stated the causes of action in the original counterclaim were of the same nature as those in the proposed counterclaim to be refiled.

{¶70} In this case, all of the parties agree the counterclaims are compulsory. Accordingly, Ms. Nader and the Trust's counterclaims must be asserted in the original case or they will be barred by res judicata. *See Quintus*, 41 Ohio App.3d at 403-404.

{¶71} The record reflects that Ms. Nader and the Trust timely filed a counterclaim in response to the Bank's amended complaint and voluntarily dismissed it 30 months later. Accordingly, Ms. Nader and the Trust's counterclaim was not "[o]mitted" as contemplated by Civ.R. 13(F), but instead filed and voluntarily dismissed pursuant to Civ.R. 41(C). They sought the ability to refile the previously dismissed counterclaim in the original case, which was still pending. While this is not an omitted counterclaim, Civ.R. 13(F), in conjunction with Civ.R.

15(A), provides a framework to consider whether a party should be afforded leave to file an amended answer and to refile a counterclaim in a pending original action.

**{¶72}** In support their Civ.R. 13(F) motion, Ms. Nader and the Trust argue oversight, inadvertence, or excusable neglect with respect to Attorney Gold dismissing the counterclaim and the "when justice requires" provision because the counterclaim is compulsory and res judicata bars them from asserting the claims in another action.

**{¶73}** The Bank focused on the lengthy pendency and procedural posture of the case in relation to the timing of the motion. The Bank argued there was no showing of oversight, inadvertence, or excusable neglect arising from the dismissal of the counterclaim because a party "is generally responsible for acts or omissions of her counsel." *Crawford v. Crawford*, 12th Dist. Warren Nos. CA97-09-099, CA97-10-105, 1998 WL 191413, *2 (Apr. 20, 1998), citing *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 152 (1976); *see Pickawillany Condominium Unit Owners' Assn. v. Kuhar*, 10th Dist. Franklin No. 87AP-88, 1988 WL 4679, *2 (Jan. 19, 1988) (The court found that the "[f]ailure to file an amended counterclaim was the result of counsel's advice, not as a result of 'oversight, inadvertence, or excusable neglect'"). Thus, the dismissal of the counterclaim by the first attorney and any alleged failure to advise Ms. Nader and the Trust as to the ramifications of such a dismissal is not a result of oversight, inadvertence, or excusable neglect.

**{¶74}** Additionally, the Bank argued a refiling of the counterclaim after the case had been pending for almost four years and following the issuance of an adverse ruling would be prejudicial to the Bank. *See BAC Home Loans Servicing, LP v. Mullins*, 12th Dist. Preble No. CA2013-12-015, 2014-Ohio-4761, ¶ 17; *see Chase Manhattan Mtge. Corp. v. Urquhart*, 12th Dist. Butler Nos. CA2004-04-098, CA2004-10-271, 2005-Ohio-4627, ¶ 18. The motion in

limine ruling and order striking the jury demands limited the issues and presentation of the case at trial. The counterclaim would reintroduce those issues into the case.

{¶75} The trial court recognized the parties had engaged in disputed discovery concerning the counterclaims for 27 months. Ms. Nader and the Trust obtained extra time to respond to the summary judgment motion only to dismiss the counterclaim on the day their response was due. The case had been pending for almost three years when the counterclaim was dismissed and remained pending for another year after the counterclaim was dismissed. And yet Ms. Nader and the Trust did not once argue to the court during that time that the counterclaim was improperly dismissed.

{¶76} The trial court noted that Ms. Nader and the Trust had been through two prior attorneys during which time it issued adverse rulings against Ms. Nader and the Trust by way of the motion in limine and striking their jury demands. The timing of the motion for leave to reinstate the counterclaim was viewed as a mechanism to circumvent the adverse rulings. The trial court held the prior dismissal of the counterclaim in response to summary judgment, the passage of a year, and then the request to refile the counterclaim as the trial date neared to be prejudicial to the Bank as it would further delay a foreclosure action that had been pending for four years.

{¶77} While Ohio courts recognize a policy that cases should be decided on the merits, they also adhere to a policy that disputes be resolved in a timely manner. Based on the foregoing, this Court finds no abuse of discretion by the trial court in denying Ms. Nader and the Trust's motion for leave to refile their counterclaim. Their third assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE MOTION OF PLAINTIFF-APPELLEE FIRST NATIONAL

BANK OF PENNSYLVANIA TO STRIKE THE JURY DEMAND OF [DEFENDANTS]-APPELLANTS RUTH S. NADER, INDIVIDUALLY AND AS TRUSTEE OF THE ALMOST HEAVEN REVOCABLE TRUST, AND MALEK ABBOUD.

{¶78} In their first assignment of error, Ms. Nader, the Trust, and Malek Abboud argue the trial court erred by striking their jury demands as to the Bank's claims in the amended complaint. Based on this Court's resolution of the third, fourth, and fifth assignments of error, this Court declines to address their first assignment of error as it has been rendered moot. *See* App.R. 12(A)(1)(c).

### ASSIGNMENT OF ERROR NO. 6

THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST APPELLANTS AND ISSUING A DECREE OF FORECLOSURE IN FAVOR OF APPELLEE.

{¶79} Ms. Nader, the Trust, and Malek Abboud stated the sixth assignment of error on page 1 of their brief, but made no arguments as to how the trial court erred when it entered a judgment and decree of foreclosure in favor of the Bank.

{¶80} App.R. 12(A)(2) states that "[t]he court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7). "This Court will not create an argument on the behalf of an appellant." *Id*., citing *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Thus, pursuant to App.R. 12(A)(2) and App.R. 16(A), this Court declines to review their sixth assignment of error.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION TO EXCLUDE EVIDENCE ORIGINATING PRIOR TO OR CONTEMPORANEOUS WITH EXECUTION OF THE MODIFICATION AGREEMENTS REGARDING AMOUNTS OWED ON THE PROMISSORY NOTE AND CREDIT LINE.

**{¶81}** The second assignment of error challenges the trial court's ruling on a motion in limine. While Ms. Nader, the Trust, and Malek Abboud listed the second assignment of error on page 1 of their brief, they failed to make any arguments regarding this assignment of error in their brief. Accordingly, the second assignment of error fails to comply with App.R. 16(A)(7).

**{¶82}** Further, the second assignment of error is not properly before this Court because it involves a motion in limine. "Ohio law is clear * * * that a ruling on a motion in limine may not be appealed and that objections to the introduction of testimony or statements of counsel must be made during the trial to preserve evidentiary rulings for appellate review." *Gable v. Gates Mills,* 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 34. In this case, there was no error preserved because the trial court disposed of the case via summary judgment and there was no trial. *See Brannon v. Austinburg Rehab. and Nursing Ctr.*, 190 Ohio App.3d 662, 2010-Ohio-5396, ¶ 51 (11th Dist.) (Grendell, J., concurring in part and dissenting in part). Accordingly, this Court declines to address their second assignment of error.

III.

**{¶83}** Ms. Nader, the Trust, and Malek Abboud's third, fourth, and fifth, assignments of error are overruled. This Court declines to address their first, second, and sixth assignments of error. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MICHAEL ATEN, Attorney at Law, for Appellants.

RICHARD W. CLINE, ADAM C. SMITH, and JOSEPH M. MUSKA, Attorneys at Law, for Appellee.