CARR, J., DISSENTING.
 

 {¶48} I respectfully dissent from the judgment of the majority. I would sustain the first assignment of error as I would conclude that the arbitration agreement is procedurally and substantively unconscionable.
 

 {¶49} "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." (Internal quotations and citations omitted.)
 
 Taylor Bldg. Corp. of Am. v. Benfield
 
 ,
 
 117 Ohio St.3d 352
 
 ,
 
 2008-Ohio-938
 
 ,
 
 884 N.E.2d 12
 
 , ¶ 44. Here, undoubtedly, there was a disparity in the bargaining power between the parties. Carrols drafted the arbitration agreement and was a large entity with thousands of employees. Mr. Jones was a high school graduate who was supporting a family, did not understand arbitration, and whose only option to maintain his employment was to agree to the arbitration agreement. Thus, his situation was not like that of a potential employee looking for a job who could simply apply somewhere else. Mr. Jones would have to leave a job he already had and then search for a new one if he were to object to the arbitration agreement. Thus, I would determine that the arbitration agreement was procedurally unconscionable.
 

 {¶50} "Substantive unconscionability encompasses those factors that concern the contract terms themselves[.] Contract terms are [substantively] unconscionable if they are unfair and commercially unreasonable." (Internal quotations and citation omitted.)
 
 First Natl. Bank of Pennsylvania v. Nader
 
 , 9th Dist. Medina No. 16CA0004-M,
 
 2017-Ohio-1482
 
 ,
 
 89 N.E.3d 274
 
 , ¶ 32. Here, the arbitration agreement required that Mr. Jones arbitrate "any and all disputes, claims or controversies for monetary or equitable relief arising out of or relating to [his] employment, even disputes, claims or controversies relating to events occurring outside the scope of [his] employment[.]" Those claims included "disputes, claims or controversies relating or referring in any manner, directly or indirectly to: * * * personal or emotional injury to [him] or [his] family[.]" Thus, it seems Carrols was requiring that Mr. Jones arbitrate far more than disputes relating to his employment.
 

 {¶51} The arbitration agreement also states that the claims "shall be arbitrated before JAMS, a national arbitration association, and conducted under the then current JAMS rules on employment arbitration." However, the copy of those rules presented by Carrols, which notably are effective as of July 15, 2009, state that "JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules." Those rules include, inter alia, provisions about how to commence arbitration, arbitrator selection and replacement, scheduling and location of the hearing, awards, and fees. Accordingly, it would seem impossible for Mr. Jones to know what rules would apply to him given that there would be no way to know in advance what rules would be in effect when arbitration was finally sought.
 
 See
 

 Arnold v. Burger King
 
 , 8th Dist. Cuyahoga No. 101465,
 
 2015-Ohio-4485
 
 ,
 
 48 N.E.3d 69
 
 , ¶ 97.
 

 {¶52} However, not only would Mr. Jones need to refer to the above mentioned rules to understand what he was agreeing to in the arbitration agreement, he would also have to refer to the JAMS
 

 Policy on Employment Arbitration Minimum Standards of Procedural Fairness, which, according to the arbitration agreement, Carrols "will satisfy[.]" The copy of that policy presented by Carrols, and also effective July 15, 2009, states that "[a]ll remedies that would be available under the applicable law in a court proceeding * * * must remain available in the arbitration[ ]" however, the arbitration agreement itself states that "[t]he arbitrator * * * will limit your relief to compensation for demonstrated and actual injury to the extent consistent with the [policy]." Overall, the terms of the arbitration agreement are confusing and require one to examine multiple documents, at least one of which was subject to change without notice. Thus, I would likewise determine the arbitration agreement was substantively unconscionable as well.
 

 {¶53} Given the foregoing, I would sustain Mr. Jones' first assignment of error.