# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

SILTSTONE RESOURCES, LLC,

Plaintiff-Appellee,

v.

STATE OF OHIO PUBLIC WORKS
COMMISSION, et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 BE 0042

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CV 128

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Andrew P. Lycans*, Critchfield, Critchfield, & Johnson, LTD., 225 North Market Street, P.O. Box 599, Wooster Ohio 44691 and *Atty. Manmeet S. Walla*, Siltstone Resources, LLC, 1801 Smith Street, Suite 2000, Houston Texas 77002 for Plaintiff-Appellee and

*Atty. Michael DeWine*, Ohio Attorney General, *Atty. Jennifer Croskey, Atty. James Patterson, Atty. Rachel Huston, Atty. Christie Limbert, Atty. Leigh Bayer*, Assistant Attorneys General, Executive Agencies Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215 for Defendants-Appellants and

*Atty. William B. Benson, Atty. Maribeth Meluch*, Isaac, Wiles Burkholder & Teetor, LLC, Two Miranova Place, Suite 700, Columbus, Ohio 43215 for Appellee-Defendant, The Guernsey County Community Development Corporation and

*Atty. Aaron M. Bruggeman, Atty. Christine Rideout Schirra, Atty. Daniel C. Gibson, Atty. Matthew W. Warnock , Atty. Kara Herrnstein*, Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215 and *Atty. Zachary M. Simpson*, Gulfport Energy Corporation, 14313 North May Avenue, Suite 100, Oklahoma City, Oklahoma 73134 for Cross-Claim Appellee-Defendant, Gulfport Energy Corporation and

*Atty .Richard V. Zurz, Jr*. Slater & Zurz, LLP, One Cascade Plaza, Akron, Ohio 44308, for Cross-Claim Defendants-Appellees, Patriot Land Co. and James Coffelt and

*Atty. John Kevin West*, Steptoe & Johnson PLLC, 41 South High Street, Suite 2200, Columbus, Ohio 43215 and *Atty. Kara Herrnstein*, Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215 for Cross-Claim Defendant-Appellee, Windsor Ohio, LLC and

*Atty. David K. Schaffner, Schaffner Law Offices, Co., L.P.A,* 132 Fair Avenue, N.W., New Philadelphia, Ohio 44663 and *Atty. Kara Herrnstein*, Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215 for Cross-Claim Defendant-Appellee, Whispering Pines, LLC and

*Atty. Erik A. Schramm, Atty. Kyle W. Bickford,* Hanlon, Estadt, McCormick & Schramm Co., LPA, and *Atty. Kara Herrnstein,* Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215 for Cross-Claim Defendant-Appellee, Axebridge Energy, LLC and

*Atty. Scott M Zurakowsk*i, *Atty. William G. Williams, Atty. Matthew W. Onest,* Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., 4775 Munson Street N.W., P O Box 36963, Canton, Ohio 44735 and *Atty. Kara Herrnstein,* Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215 for Cross-Claim Defendant-Appellee, Eagle Creek Farm Properties, Inc. and

*Atty. William J. Taylor, Atty. Scott D. Eickelberger, Atty. Ryan H. Linn, Atty. David J. Tarbert,* Kinkaid, Taylor & Geyer, 50 North Fourth Street, P.O. Box 1030, Zanesville, Ohio 43702, *Atty. Kara Herrnstein,* Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215 for Cross-Claim Defendant-Appellee, The Bank of Nova Scotia and

*Atty. Kevin L. Colosimo, Atty. Christopher A. Rogers, Atty. Daniel P. Craig,* Frost Brown Todd LLC, 501 Grant Street, Suite 800, Pittsburgh, Pennsylvania 15219 for Cross-Claim Defendant-Appellee, American Energy-Utica Minerals, LLC.

Dated:
November 25, 2019

**DONOFRIO, J.**

**{¶1}** Defendant-Appellant Ohio Public Works Commission (OPWC) appeals from Belmont County Common Pleas Court judgments granting Plaintiff-Appellee's Siltstone Resources, LLC; Defendant-Appellee's Guernsey County Community Development Corporation; Cross-Claim Defendants-Appellees' Gulfport Energy, Corporation; Axebridge Energy, LLC; Eagle Creek Farm Properties, Inc.; Windsor Ohio, LLC; The Bank of Nova Scotia; Whispering Pine, LLC; American Energy-Utica Minerals, LLC; Patriot Land Company, LLC; and James Coffelt (collectively referred to as Appellees) motions to dismiss, granting Appellees' motions for partial summary judgment and denying Appellant OPWC's motion for partial summary judgment. The motions for partial summary judgment concerned whether certain deed restrictions applied to the subsurface of the property at issue. The trial court found the restrictions did not apply to the subsurface.

**{¶2}** This case concerns the Clean Ohio Conservation Program and approximately 228.45 acres of property in Belmont County, Ohio.

**{¶3}** In 2000, Ohio voters approved a constitutional amendment to create a tax-exempt bond fund to be used for environmental conservation and revitalization purposes. Ohio Constitution, Article VIII, Section 2o(A). The amendment permitted the General Assembly to enact laws in accordance with the amendment. Ohio Constitution, Article VIII, Section 2o(B). As a result of the amendment, the Clean Ohio Fund Green Space Conservation Program was created and Appellant OPWC was tasked with administering the program.

**{¶4}** In 2005, Defendant-Appellee Guernsey County Community Development Corporation (Guernsey) applied for a $430,200 grant from the Clean Ohio Conservation Fund for the Leatherwood Creek Riparian Project. The money was to be used to purchase the 228.45 acre tract of land in Belmont County that parallels Leatherwood

Case No. 18 BE 0042

Creek. Appellee Guernsey was going to restore the area to its natural state. It appears this 228.45 acre tract abuts land in Guernsey County paralleling the Leatherwood Creek. The abutting tract appears to be owned by Appellee Guernsey and is part of the Leatherwood Creek Riparian Project. The 228.45 acres includes a railway bed to be turned into a hike and bike trail.

{¶5} The 228.45 tract of land was previously strip mined and was being reclaimed by Capstone Holding Company.

{¶6} Appellant OPWC approved the grant and a project agreement was entered into between Appellant OPWC and Appellee Guernsey in 2006. As part of the agreement, deed restrictions were required to be recorded with the deed.

{¶7} In 2007, Appellee Guernsey purchased the 228.45 acres from Capstone. The deed contained the following restrictions:

1. Use and Development Restrictions. Declarant hereby agrees, for itself and its successors and assigns as owners of the Property, which Property shall be subject to the following: This property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this particular parcel. Only current structures will be maintained and no new structures will be built on the premises.

2. Perpetual Restrictions. The restrictions set forth in this deed shall be perpetual and shall run with the land for the benefit of, and shall be enforceable by, Ohio Public Works Commission (OPWC). This deed and the covenants and restrictions set forth herein shall not be amended, released, extinguished or otherwise modified without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

3. Enforcement. If Grantee, or its successors or assigns as owner of the Property, should fail to observe the covenants and restrictions set forth herein, the Grantee or it is successors or assigns, as the case may be, shall pay to OPWC upon demand, as liquidated damages, an amount equal to the rate of (a) two hundred percent (200%) of the amount of the Grant

received by Grantee, together with interest accruing at the rate of six percent (6%) per annum from the date of Grantee's receipt of the Grant, or (b) two hundred percent (200%) of the fair market value of the Property as of the date or demand by OPWC. Grantee acknowledges that such sum is not intended as, and shall not be deemed, a penalty, but is intended to compensate for damages suffered in the event a breach or violation of the covenants and restrictions set forth herein, the determination of which is not readily ascertainable.

OPWC shall have the right to enforce by any proceedings at law or in equity, all restrictions, conditions, and covenants set forth herein. Failures by OPWC to proceed with such enforcement shall in no event be deemed a waiver of the right to enforce at a later date the original violation or subsequent violation.

4. Restrictions on transfer of the Property. Grantee acknowledges that the Grant is specific to Grantee and that OPWC's approval of Grantee's application for the Grant was made in reliance on Grantee's continued ownership and control of the Property. Accordingly, Grantee shall not voluntarily or involuntarily sell, assign, transfer, lease, exchange, convey or otherwise encumber the Property without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

(2007 Deed from Capstone Holding Company to Appellee Guernsey).

{¶8} Although the deed does not contain any oil and gas mineral reservation language, it is undisputed that about 10 acres of the land conveyed had a prior mineral interest, known as the Devine reservation. The remainder of the minerals were conveyed to Appellee Guernsey with the surface. Consequently, Appellee Guernsey owned the mineral rights to approximately 218 acres.

{¶9} In 2011, without written permission from Appellant OPWC, Appellee Guernsey entered into a lease with Appellee Patriot Energy for all the oil and gas underlying the property. This lease contains language prohibiting storage and disposal. But it does permit the drilling of one water well with lessor's consent and removal of timber after appraisal. Also, the language of the lease does not appear to prohibit disturbing the

Case No. 18 BE 0042

surface. The lease specifically states the construction or installation of access road and pipeline rights of way would be done in a way to minimize any related soil erosion, but does not require Appellee Guernsey's permission prior to surface disturbing activity. (¶17 Patriot Lease). As part of the lease, Appellee Guernsey acquired a 14% royalty interest on any oil and gas extracted from the Property.

{¶10} In 2012, Appellee Patriot assigned the lease to Appellee Gulfport.

{¶11} In 2013, without written permission from Appellant OPWC, Appellee Guernsey sold 6/7 of its mineral interest to Appellee Siltstone Resources, Inc., which amounted to 186.9189 mineral acres. (12/17/13 Purchase Agreement).

{¶12} In 2014, Appellee Guernsey, without written permission from Appellant OPWC, sold 29.595 mineral acres to Triple Crown Energy LLC and that interest was eventually assigned to Appellee American Energy-Utica Minerals, LLC.

{¶13} The parties agree that various interests in the lease and mineral estate were transferred between and among various Appellees.

{¶14} It is undisputed that to date the surface of the property has not been disturbed. No wells have been drilled on the surface, no access roads have been built on the surface, and no removal of trees has occurred. The land is potentially being drilled through use of lateral wells or preparation for drilling has begun.

{¶15} In 2017, Appellee Siltstone filed suit against Appellant OPWC, Appellee Guernsey, and Appellee Gulfport. The complaint was amended twice. The remaining Appellees were eventually added as necessary parties and OPWC filed a counterclaim against Appellee Siltstone and cross-claims against the other appellees. This included Appellee Gulfport, Appellee Guernsey, and Appellant OPWC filing cross-claims against each other.

{¶16} Appellee Siltstone sought a declaration that Appellee Guernsey did not violate the deed restrictions when it signed the oil and gas lease. Appellee Siltstone also sought to quiet title to the minerals it had purchased from Appellee Guernsey. Appellee Siltstone additionally argued Appellant OPWC could only recover monetary damages if it was determined any Appellee was liable.

{¶17} OPWC's counterclaim and cross-claims sought declaratory and injunctive relief. It asked for an injunction restraining all parties from violating the deed restrictions

and asked that the interest be assigned back to Appellee Guernsey. Appellant OPWC also asked for liquidated damages as set forth in the deed.

{¶18} Appellees filed motions to dismiss asserting Appellant OPWC could not pursue nonmonetary relief to enforce the deed restrictions. The trial court granted Appellees' motions to dismiss in part. (10/13/17 J.E.; 12/18/17 J.E.). It indicated it would not make a ruling on whether or not the restrictive covenants were void ab initio. (10/13/17 J.E.; 12/18/17 J.E.). Instead, the trial court determined injunctive relief was not available to Appellant OPWC. It determined there was no language in the statute, R.C. 164.26(A), entitling Appellant OPWC to obtain equitable relief. The only relief set forth in that statute was grant repayment and liquidated damages, i.e., monetary relief. (10/13/17 J.E.; 12/18/17 J.E.).

{¶19} Following that ruling, all parties filed motions for partial summary judgment regarding whether the Use and Development Restriction and the Restrictions on transfer of the Property applied to the subsurface. On July 20, 2018, following a hearing, the trial court granted Appellees' motions for partial summary judgment. The court determined the Use and Development Restriction was unambiguous and did not apply to the subsurface because green space is not underground. (7/20/18 J.E.). The court further determined that the Restrictions on transfer of the Property constituted an illegal, unreasonable restraint on alienability. (7/20/18 J.E.).

{¶20} Appellant OPWC timely appealed the trial court's October/December 2017 dismissal order indicating it could not pursue equitable relief and the trial court's July 2018 order granting partial summary judgment to Appellees holding there was no violation of the deed restrictions and denying Appellant OPWC's motion for partial summary judgment. It now raises two assignments of error.

{¶21} Appellant OPWC's first assignment of error states:

THE TRIAL COURT ERRED IN DENYING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN GRANTING APPELLEES' VARIOUS MOTIONS FOR PARTIAL SUMMARY JUDGMENT BECAUSE THE DEED RESTRICTIONS ARE ENFORCEABLE AND SHOULD HAVE BEEN ENFORCED AGAINST THE APPELLEES.

**{¶22}** Appellant OPWC raises two issues in this assignment of error. First, it argues the trial court erred in granting summary judgment to Appellees on the basis that the Use and Development Restriction did not apply to the subsurface since green space cannot be underground. Second, it argues the trial court erred in holding that the Alienation Restriction had no impact on the green space of the property.

**{¶23}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether its judgment granting Appellees' motions for partial summary judgment and denying Appellant OPWC's motion for partial summary judgment was proper.

**{¶24}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶25}** As stated above, the trial court determined the Use and Development Restriction only applied to the surface "because green space is not underground." (7/20/18 J.E.). It also stated "the subsurface (whether by lease, deed, mortgage, or otherwise) has no impact on the green space on the Premises." (7/20/18 J.E.). Therefore, the court concluded the "Alienation Restriction is an illegal unreasonable restraint on alienability as it has been attempted to be utilized in this case to apply to the subsurface estate." (7/20/18 J.E.).

**{¶26}** Appellant OPWC argues that decision is incorrect. It contends the language of the restriction is clear and unambiguous; the deed restrictions apply to subsurface and surface. It asserts the Ohio Constitution and R.C. 164.26 grant it the authority to establish policies to ensure the grant recipients maintain long term ownership and control of the property purchased with Clean Ohio funds. It argues environmental conservation is not limited to the surface of the land; it includes the protection of above ground and below

ground water. Alternatively, it argues even if green space only included the surface, the surface is still affected by subsurface mining, and the leasing and selling of the minerals.

{¶27} Although there are many Appellees and many Appellee briefs filed, the arguments asserted by the individual Appellees are very similar. They assert the Use and Development Restriction only restricts three uses. First, it restricts any new structures being built on the premises. Second, it restricts use that will impact the historical significance of the premises. Third, it restricts use of the property that conflicts with the premises being used as a green space park area. They contend it is undisputed that there have been no new structures built on the property and there is no evidence of "historical significance" of the property. They argue the only issue is whether subsurface lateral mining thousands of feet below the surface conflicts with the premises being used as a green space park area. They contend it does not; a green space park occurs on the surface, not the subsurface. Thus, according to Appellees the deed restriction is clear and unambiguous; it applies only to the surface and the lease/sale of the subsurface has not affected the surface in any manner. They assert the use of the word "on" when referencing new structures means the restriction only applies to the surface. They argue if the restriction was intended to restrict the subsurface that language would have been included in the restriction. Appellees contend we cannot look to R.C. 164.22 and the Ohio Constitution to determine what the deed restrictions were intended to restrict.

{¶28} Alternatively, Appellees also argue that if the deed restriction is ambiguous it should be interpreted against the party seeking to enforce the restriction and against the alienation of the property. Appellees contend the deed defines "Premises" based upon the legal description. However, it does not define "Property." Thus, since the word "Property" as used in the restriction can be defined in multiple ways, the deed restriction must be interpreted in the least restrictive manner. Appellees also assert if the Use and Development Restriction is interpreted to apply to the subsurface, then it is an unlawful restraint on alienation.

{¶29} "A 'restrictive covenant' is a 'private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put'." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28 (2002), citing

Black's Law Dictionary 371 (7th Ed.Rev.1999). Contract construction rules apply to the interpretation of the deed restrictions. In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law, which is reviewed de novo. *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Witte v. Protek Ltd.*, 5th Dist. Stark No. 2009CA00230, 2010-Ohio-1193, ¶ 6, citing *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (2d Dist.1993).

**{¶30}** Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "When construing a deed, a court must examine the language contained within the deed, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Johnson v. Consol. Coal Co.*, 7th Dist. Belmont No. 13 BE 3, 2015-Ohio-2246, ¶ 15 quoting, *McCoy v. AFTI Properties, Inc.*, 10th Dist. Franklin No. 07AP-713, 2008-Ohio-2304, ¶ 8. If the terms of the written instrument are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

**{¶31}** But when the plain language of a written instrument is ambiguous, then a court can look to parol evidence to resolve the ambiguity and ascertain the parties' intent. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994); *City of Steubenville v. Jefferson Cty.*, 7th Dist. Jefferson No. 07JE51, 2008-Ohio-5053, ¶ 22. Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.).

**{¶32}** With that standard in mind, we examine the language used in the Use and Development Restriction:

> 1. Use and Development Restrictions. Declarant hereby agrees, for
> itself and its successors and assigns as owners of the Property, which

Property shall be subject to the following: This property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this particular parcel. Only current structures will be maintained and no new structures will be built on the premises.

(2007 Deed from Capstone Holding Company to Appellee Guernsey).

{¶33} It is undisputed that no new structures have been built on the premises. Also, no one has suggested this property has historical significance.  The issue here is whether the lateral mining is a development of the "property" in a "manner that conflicts with the use of the premises as a green space park area."  Specifically, does the statement, "This property will not be developed in any manner that conflicts with the use of the Premises as a green space park area" prevent lateral mining?

{¶34} The deed defines the word "Premises."   The definition is the legal description (metes and bounds) of the land sold.  The deed does not indicate the oil and gas rights were severed from the surface.  Therefore, the word "premises" includes everything that was conveyed, including mineral rights.

{¶35} The deed defines the word "Premises" on the first page of the deed as Exhibit A, which is a legal description of the property conveyed.  The deed uses the word "premises" to describe what was conveyed. For instance, the first sentence states, "for valuable consideration received grants with limited warranty covenant to The Guernsey County Community Development Corporation * * * the following described premises." The limited warranty paragraph begins by stating, "Under and Subject to any and all exceptions, reservations, restrictions, easements, rights of way, highways, estates, covenants and conditions apparent on the premises or shown by instruments of record * * *."  It then states, "By accepting this deed Grantee also acknowledge that it has inspected the premises and is acquired the same as a result of such inspections in its present condition and circumstance."

{¶36} It is not until the restrictions that the use of the word "property" is used in the deed.  The deed does not define "property."

{¶37} The use of the words "premises" and "property" in the context they are used in this deed does not indicate that the words have two separate meanings.  They are

Case No. 18 BE 0042

referring to all the rights conveyed by deed subject to the Use and Development Restrictions that place restrictions on surface use only. When the words "property" and "premises" are used in conjunction with "green space park area" they can only apply to the surface.

**{¶38}** We agree with the trial court that "green space" is not underground, rather it is surface. "Green space park area" is not defined in the deed. Likewise, it is also not defined in the statutes enacted as part of the Ohio Clean Conservation Fund.

**{¶39}** R.C. 164.22 titled the "Natural Resources Assistance Councils; Power and Duties" provides for the natural resource assistance council to review grants for projects that propose the acquisition of land and easements in parks, forests, wetlands, natural areas for the protection of endangered plant or animal population, other natural areas, and connecting corridors for natural areas. R.C. 164.22(A). Projects proposed pursuant to division (A) must emphasize:

> (4) The preservation of existing high quality wetlands or other scarce natural resources within the geographical jurisdiction of the council;
>
> (5) The enhancement of educational opportunities and provision of physical links to schools and after-school centers;
>
> (6) The preservation or restoration of water quality, natural stream channels, functioning floodplains, wetlands, streamside forests, and other natural features that contribute to the quality of life in this state and to the state's natural heritage. Projects shall not include hydromodification projects such as dams, dredging, sedimentation, and bank clearing and shall not accelerate untreated water runoff or encourage invasive nonnative species.

R.C.164.22(A)(4)-(6).

**{¶40}** The natural resource council also reviews grants for projects that propose to:

> (B) Protect and enhance riparian corridors or watersheds, including the protection and enhancement of streams, rivers, lakes, and other waters

Case No. 18 BE 0042

of the state. Such projects may include, without limitation, the reforestation of land or the planting of vegetation for filtration purposes; the fee simple acquisition of lands for the purpose of providing access to riparian corridors or watersheds or for other purposes necessary for the protection and enhancement of riparian corridors or watersheds; and the acquisition of easements for the purpose of protecting and enhancing riparian corridors or watersheds. Projects proposed pursuant to division (B) of this section shall emphasize the following:

(1) The increase of habitat protection;

(2) Inclusion as part of a stream corridor-wide or watershed-wide plan;

(3) The provision of multiple recreational, economic, and aesthetic preservation benefits;

(4) The preservation or restoration of floodplain and streamside forest functions;

(5) The preservation of headwater streams;

(6) The restoration and preservation of aquatic biological communities.

Projects shall not initiate or perpetuate hydromodification projects such as dams, ditch development, or channelization.

R.C.164.22(B).

{¶41} These statutes refer to surface areas. Therefore, they support our conclusion that "green space park area" is a reference to the surface.

{¶42} Since there is no statutory or deed definition for "green space park area," rules of construction indicate we use the common definition. A park is an area of land set aside for public use. https://www.thefreedictionary.com/park. Green space is "a natural area in or around a development, intended to provide buffer, noise control, recreational use, and/or wildlife refuge, all in order to enhance the quality of life in and around the development." https://financial-dictionary.thefreedictionary.com/ green+space. Green space is often intentionally provided in the urban setting; it is nature space in the city. However, green space may occur in the rural setting also. Commonly, in the rural settings

Case No. 18 BE 0042

it is preserving areas of nature from development or reclaiming areas of nature that were used for industry. In northeast Ohio, unused railways are converted to trails and land stripped from mining is reclaimed. Both occurred on the property in this case.

**{¶43}** Therefore, the phrase "green space park area" means the portion of the property that one would use in the normal park setting, meaning the area on which one actually walks, runs, bikes, and hikes, which is the surface, not the subsurface. The trial court's limitation of green space to the surface of the property was correct.

**{¶44}** Appellant OPWC argues that allowing lateral mining still permits Appellees reasonable access to the surface and therefore allowing mining of any sort defeats the purpose of a "green space park area." Admittedly, at common law the mineral holder was still entitled to reasonable access to the surface to reach his or her property. Eastern Mineral Law Foundation, The Issues: The Rights and Interests at Play, 23 E. Min. Found. § 9.04, 2003 WL 22234516 ("Despite the availability of modern directional drilling, the development and production of oil and gas in Eastern states most often requires reasonable access to and the use and occupancy of some portion of the surface."). See also *Skivolocki*, 38 Ohio St.2d at 249, fn. 1 ("* * * unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use as much of the surface as may be reasonably necessary to reach and remove the minerals.' See, also, 37 Ohio Jurisprudence 2d 18, Mines and Minerals, Section 14. This implied right of the mineral owner is best explained as a practical attempt to insure that both he, and the surface owner, can enjoy their respective estates."). If the mineral holder was not permitted reasonable access, then the minerals would essentially be landlocked without means of extraction. Typically when mineral rights are leased, the lease usually permits reasonable access to the surface by the terms of the lease. For instance, often the lease permits drilling of water wells, building access roads, installing fencing, and removing trees and brush. These acts affect the surface.

**{¶45}** The lease with Appellee Patriot includes provisions such as these. Admittedly, it does not permit the placement of a wellhead on the property. But it does permit removal of timber and the drilling of a water well. These things affect the surface. However, the restrictions set forth in the deed that run with the land clearly do not permit any disturbance of the surface. Therefore, Appellees or their heirs or assigns are not

permitted to disturb the surface in any manner that conflicts with the use of the property as a "green space park area." Given the restrictions, neither the lease nor the common law allows for access to the surface of the property at issue in this case.

**{¶46}** For those reasons, the language of the restriction is clear and unambiguous; the Use and Development Restrictions only apply to the surface. The trial court's decision was correct on this point.

**{¶47}** Next, we must move to examine Appellant OPWC's second argument regarding the Restrictions on transfer of the Property. As to this issue, the trial court found that applying the Restrictions on transfer of the Property to the subsurface is an unreasonable restraint on the alienation of the property. These restrictions provide:

> 4. <u>Restrictions on transfer of the Property.</u> Grantee acknowledges that the Grant is specific to Grantee and that OPWC's approval of Grantee's application for the Grant was made in reliance on Grantee's continued ownership and control of the Property. Accordingly, Grantee shall not voluntarily or involuntarily sell, assign, transfer, lease, exchange, convey or otherwise encumber the Property without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

(Deed from Capstone Holding Company to Appellee Guernsey).

**{¶48}** In addressing the Restrictions on transfer of the Property, which it termed the "Alienation Restriction," the trial court found that the alienability of the subsurface has no impact on the green space of the property. Therefore, the trial court concluded that the Restrictions on transfer of the Property were an "illegal unreasonable restraint on alienability as it has been attempted to be utilized in this case to apply to the subsurface estate." (July 20, 2018 Judgment Entry).

**{¶49}** Appellant OPWC argues these restrictions are clear and unambiguous and required Appellee Guernsey to maintain ownership and control over the property. It points out that these restrictions do not differentiate between a lease of the surface and a lease of the mineral rights. It notes that the deed conveyed the entire property, including the subsurface estate. And the deed specifically stated: "This conveyance is SUBJECT

to the following restrictions."  One of the restrictions is the Restrictions on transfer of the Property.

{¶50}   The trial court erred in finding that the Restrictions on transfer of the Property apply only to the surface.  There is no question that Appellee Guernsey entered into an oil and gas lease with Appellee Patriot Energy in 2011 without consent from Appellant OPWC.  Likewise, there is no question that in 2013 Appellee Guernsey sold 6/7 of its mineral interest to Appellee Siltstone without Appellant OPWC's consent.  Finally, there is no question that in 2014 Appellee Guernsey sold 29.595 mineral acres to Triple Crown Energy, LLC without Appellant OPWC's consent and that interest was eventually assigned to Appellee American Energy-Utica Minerals, LLC.  These transactions were all in clear violation of the Restrictions on transfer of the Property because not once did Appellee Guernsey seek Appellant OPWC's consent.

{¶51}   The reference to "property" in the Restrictions on transfer of the Property refers to both the surface and the subsurface.  In the Restrictions on transfer of the Property there is no reference to "green space park area" to modify "property."  It is because of the green space park area language in the Use and Development Restrictions that those restrictions only apply to the surface and not to the subsurface.  As stated above, the use of the words "premises" and "property" as used in this deed do not have two separate meanings.  The deed defines "premises" by setting out the metes and bounds of the land sold.  The word "premises" includes everything that was conveyed, including mineral rights.  Following this logic, "property" as used in the Restrictions on transfer of the Property includes the subsurface minerals.

{¶52}   It is also important to point out that the deed uses the phrase "This conveyance is SUBJECT to the following restrictions" just before listing the restrictions.  The "conveyance" does not refer solely to the surface land but to all land conveyed, including the subsurface mineral rights.  Thus, the use of this language further supports reading the Restrictions on transfer of the Property to apply to the subsurface.

{¶53}   Moreover, while the trial court calls the restriction an "illegal unreasonable restraint on alienability," it offers no law or explanation for this conclusion.  The issue surrounding the Restrictions on the transfer of the Property is a matter of contract interpretation.  The language of the Restriction is clear and unambiguous.  Appellee

Guernsey was not to sell, assign, transfer, lease, exchange, or convey the property without Appellant OPWC's consent. Appellee Guernsey violated this restriction when it leased and sold the property.

**{¶54}** In sum, there is no genuine issue of material fact that Appellee Guernsey violated the Restrictions on transfer of the Property and that these restrictions apply to the subsurface. Therefore, the trial court erred in granting partial summary judgment in favor of Appellees and in denying Appellant OPWC's motion for partial summary judgment. Because Appellee Guernsey violated the Restrictions on transfer of the Property, the trial court should have granted summary judgment in favor of Appellant OPWC.

**{¶55}** Accordingly, Appellant OPWC's first assignment of error has merit in part and it is sustained in part.

**{¶56}** Appellant OPWC's second assignment of error states:

> THE TRIAL COURT ERRED IN DISMISSING COUNT 1 AND COUNT 2 OF THE COMMISSION'S COUNTERCLAIM AND CROSS-CLAIM, BECAUSE THE COMMISSION CAN ENFORCE THE DEED RESTRICTIONS IN EQUITY.

**{¶57}** Appellant OPWC's second assignment of error concerns the trial court's November 6, 2017 judgment entry and December 18, 2017 conclusions of law, which determined that injunctive relief was not available to Appellant OPWC. The trial court dismissed Appellant OPWC's claims seeking injunctive or non-monetary relief for the alleged breach of the deed restrictions. These claims sought to prevent Appellees from lateral mining, null the lease, and have the subsurface interest that was sold by Appellee Guernsey returned to Appellee Guernsey.

**{¶58}** Appellant OPWC argues the deed restrictions allow for the right to enforce the restrictions at law or in equity. Thus, it contends it could pursue equitable remedies. Furthermore, it contends that although R.C. 164.26(A) only lists liquidated damages, it does not indicate monetary damages are the sole remedy.

**{¶59}** The Enforcement Restriction of the deed states:

Case No. 18 BE 0042

3. <u>Enforcement.</u> If Grantee, or its successors or assigns as owner of the Property, should fail to observe the covenants and restrictions set forth herein, the Grantee or it is successors or assigns, as the case may be, shall pay to OPWC upon demand, as liquidated damages, an amount equal to the rate of (a) two hundred percent (200%) of the amount of the Grant received by Grantee, together with interest accruing at the rate of six percent (6%) per annum from the date of Grantee's receipt of the Grant, or (b) two hundred percent (200%) of the fair market value of the Property as of the date or demand by OPWC. Grantee acknowledges that such sum is not intended as, and shall not be deemed, a penalty, but is intended to compensate for damages suffered in the event a breach or violation of the covenants and restrictions set forth herein, the determination of which is not readily ascertainable.

OPWC shall have the right to enforce by any proceedings at law or in equity, all restrictions, conditions, and covenants set forth herein. Failures by OPWC to proceed with such enforcement shall in no event be deemed a waiver of the right to enforce at a later date the original violation or subsequent violation.

(2007 Deed from Capstone Holding Company to Appellee Guernsey).

{¶60} This restriction provides for liquidated damages. It also permits proceedings in equity. Therefore, the restriction allows for both monetary and equitable relief.

{¶61} The trial court, however, found that R.C. 164.26(A) prohibited equitable relief. R.C. 164.26(A) provides:

> The director of the Ohio public works commission shall establish policies related to the need for long-term ownership, or long-term control through a lease or the purchase of an easement, of real property that is the subject of an application for a grant under sections 164.20 to 164.27 of the Revised Code and establish requirements for documentation to be submitted by grant applicants that is necessary for the proper administration of this division. The policies shall provide for

proper liquidated damages and grant repayment for entities that fail to comply with the long-term ownership or control requirements established under this division.

{¶62}    The trial court noted that this section anticipates that grant recipients may alienate property purchased with grant funds and imposes monetary consequences for these actions.  It found that because this section does not specifically identify equitable relief, it cannot be a remedy.  The trial court determined that granting injunctive relief in this case would be in direct violation of R.C. 164.26(A).  It reasoned that if the Legislature had intended equitable relief to be available in cases such as this one, it would have included equitable relief in the statute.

{¶63}    Appellant OPWC argues that a breach of a restrictive covenant can generally be prevented by a court of equity.  It asserts that when deed restrictions are clear and unambiguous, courts must enforce them.  In this case, Appellant OPWC points out, the Enforcement Restriction clearly states that it has the right to enforce all restrictions by any proceedings at law or in equity.  And it notes that Appellee Guernsey knew that it was agreeing to the restrictions of long-term ownership of the property.

{¶64}    Moreover, Appellant OPWC argues that enforcement of the restrictions by injunctive relief is necessary to promote public policy.  It contends that its equitable claims against the appellees in this case are necessary to protect the Clean Ohio Fund and Program.  If it is not able to enforce the long-term ownership of the property via equitable means, Appellant OPWC argues then nothing prevents a grant recipient from acting as a straw man to acquire property and to then sell it to be used as a landfill, for strip mining, for dumping, or any other purpose.  It contends that without equitable relief as a remedy, it would never be able to prevent any of these uses.

{¶65}    Appellant OPWC's arguments are convincing.

{¶66}    First, nothing in R.C. 164.26(A) prevents equitable relief.  That section instructs the director of the OPWC to establish policies related to the need for long-term ownership or control of property that is subject to clean Ohio conservation fund grants.  It also states the policies are to provide for proper liquidated damages and grant repayment for entities that fail to comply with the long-term ownership or control requirements.  Reading the plain wording of the statute leads to the conclusions that (1) the OPWC

Case No. 18 BE 0042

director must establish policies relating to the need for long-term ownership or control of the property that is the subject of the grant and (2) some of those policies are to provide for liquidated damages and grant repayment for failure to comply with the long-term requirement.

**{¶67}** Nothing in the statute prevents equitable relief as a remedy for failure to comply with the long-term ownership requirement. The statute does not include an exclusive list of remedies. The remedies the statute mentions are in regard to instructing the director of the OPWC to establish policies to provide for liquidated damages and grant repayment.

**{¶68}** Second, the Enforcement Restriction clearly and unambiguously provides that Appellant OPWC has the right to enforce the deed restrictions in equity. Nothing in the language of the Enforcement Restriction can be construed to mean anything else.

**{¶69}** As noted by the Fifth District:

> The Supreme Court of Ohio has consistently held that "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." *Houk v. Ross* (1973), 34 Ohio St.2d 77, 296 N.E.2d 266, paragraph two of the syllabus, overruled on other grounds by *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335. "*Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. * * * The key issue is to determine the intent of the parties as reflected by the language used in the restriction.*" *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 556-557.

(Emphasis added); *Morgan Woods Homeowners' Assn. v. Wills*, 5th Dist. Licking No. 11 CA 57, 2012-Ohio-233, ¶ 42.

**{¶70}** The parties' intent when they agreed to the restrictions here is clear. Appellee Guernsey was not to "sell, assign, transfer, lease, exchange, convey or otherwise encumber the Property without the prior written consent of OPWC[.]" If

Appellee Guernsey violated the above restriction, then Appellant OPWC could enforce that restriction "by any proceedings at law or in equity[.]"

{¶71} Because the equitable relief is not prohibited by statute and because the restrictions are clear and unambiguous, the trial court erred in dismissing Appellant OPWC's claims for equitable relief.

{¶72} Accordingly, Appellant OPWC's second assignment of error has merit and is sustained.

{¶73} For the reasons stated above, the trial court's judgment denying Appellant OPWC's motion for partial summary judgment and granting partial summary judgment to Appellees is hereby reversed. Appellant OPWC's motion for partial summary judgment is sustained. The trial court's judgment dismissing Appellant OPWC's claims for equitable relief is also reversed. This matter is remanded to the trial court to determine the proper equitable relief and/or the amount of liquidated damages appellant OPWC is entitled to based on Appellee Guernsey's breach of the Restrictions on transfer of the Property.

Waite, P. J., concurs.
Robb, J., dissents with dissenting opinion.

Case No. 18 BE 0042

Robb, J., dissenting.

{¶74}   I respectfully dissent from the decision reached by my colleagues; I would affirm the trial court's decision.

{¶75}   I agree that the Use and Development Restrictions only apply to the surface and the trial court was correct in that determination.  However, I disagree with my colleagues analysis regarding the Alienation Restriction.  I would hold the trial court was correct in its determination that applying the Alienation Restriction to the subsurface is an unreasonable restraint on the alienation of the property.

{¶76}   The Alienation Restriction specifically refers to Appellant OPWC.  It is undisputed that Appellee Guernsey applied for a grant from the Clean Ohio Conservation Fund for the purposes of utilizing the space as a green space park area; its application for the fund clearly sets forth what improvements it was making for the property and its use.  Therefore, although this restriction does not use the term "green space park area," the reference to Appellant OPWC indicates the purpose of the restriction is to maintain it for the purposes that the grant was awarded to Appellee Guernsey.  As discussed above, green space refers only to surface.  While it was permissible to restrain the use of the surface and require consent for transfers of the surface, it is unreasonable to require approval for transfers of the subsurface and permit Appellant OPWC to refuse, for any reason, the transfer of the subsurface.  This is especially the case in this instance where the Use and Development Restriction runs with the land.  This holding is the least restrictive interpretation of the covenant and reinforces the public policy for the development of oil and gas production.  *Newbury Twp. Bd. of Twp. Trustees v. Lomak Petroleum (Ohio), Inc.,* 62 Ohio St.3d 387, 389, 583 N.E.2d 302 (1992) ("It is the public policy of the state of Ohio to encourage oil and gas production when the extraction of those resources can be accomplished without undue threat of harm to the health, safety and welfare of the citizens of Ohio.").

{¶77}   Accordingly, I would find that the first assignment of error lacks merit in its entirety; the Use and Development Restrictions only apply to surface and the Alienation

Case No. 18 BE 0042

Restriction does not prohibit the lease or sale of the mineral interests. Since I find there is no breach of the restrictions, the second assignment of error, in my opinion, is moot and I would not address it.

{¶78}   For the above stated reasons, I would affirm the trial court's decision.

_____

For the reasons stated in the Opinion rendered herein, Appellant OPWC's first assignment of error is sustained in part and overruled in part. Appellant OPWC's second assignment of error is sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, denying Appellant OPWC's motion for partial summary judgment and granting partial summary judgment to Appellees is hereby reversed. Appellant OPWC's motion for partial summary judgment is sustained. The trial court's judgment dismissing Appellant OPWC's claims for equitable relief is also reversed. This matter is remanded to the trial court to determine the proper equitable relief and/or the amount of liquidated damages appellant OPWC is entitled to based on Appellee Guernsey's breach of the Restrictions on transfer of the Property. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**